UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
UNITED STATES OF AMERICA :
:
    -v- : 17 Cr. 312 (JPC)
:
ALFRED PABON, : MEMORANDUM OPINION
: AND ORDER
    Defendant. :
:
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

    Defendant Alfred Pabon moves for compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic and his familial responsibilities. The Government opposes Pabon's request. For the following reasons, the Court denies Pabon's motion.

## I. Background

    Beginning in November 2015, Pabon posted dozens of images and videos of child pornography in group chats on Kik, an Internet-based messaging service. Presentence Investigation Report ("PSR") ¶ 9, 15-16. The group chats in which Pabon uploaded this content were dedicated almost exclusively to trading and discussing child pornography and conversing about engaging in sexual activity with minors. *Id.* ¶ 14. Pabon also had private Kik conversations with an undercover agent during which Pabon discussed traveling to Mexico to have sex with a minor and inquired about the cost for engaging in sexual activity with a thirteen-year old girl in Mexico. *Id.* ¶¶ 10-12.

    On February 14, 2017, Pabon was arrested and admitted, after waiving his *Miranda* rights, to distributing images and videos depicting child pornography on Kik chat rooms. *Id.* ¶ 17. A

subsequent search of one of Pabon's cell phones uncovered more than 1,500 images of child pornography, and law enforcement recovered a Dropbox link that Pabon posted in a Kik chatroom that contained 33 videos, the majority of which featured child pornography. *Id.* ¶ 18. The child pornography that Pabon received or distributed included 188 images portraying sadistic or masochistic conduct, 724 images of infants and toddlers, 1,059 images involving adults engaged in sexual activity with minors, and 236 images involving minors engaged in sexual activity with other minors.[1] *Id.* According to information obtained from the National Center for Missing & Exploited Children ("NCMEC"), the images and videos that Pabon possessed included 62 different series that depicted known child victims. *Id.* ¶ 21.

On May 1, 2018, Pabon pleaded guilty to a one-count superseding information that charged him with receipt and distribution of child pornography. Dkt. 22. At sentencing, the Honorable Deborah A. Batts calculated Pabon's Sentencing Guidelines range as 210 to 240 months' imprisonment, with a mandatory minimum term of 60 months. Dkt. 48 ("Sentencing Tr.") at 9. After the Government took the position that a sentence below that range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing, Dkt. 29, Judge Batts imposed a below-Guidelines sentence of 72 months, Sentencing Tr. at 11. Pabon began serving his term of imprisonment on July 22, 2019 at FCI Allenwood Low in Pennsylvania ("Allenwood Low"). According to the Bureau of Prisons' website, Pabon is scheduled for release on August 30, 2024.

On January 26, 2021, Pabon, proceeding *pro se*, filed an emergency motion for compassionate release, dated January 15, 2021, seeking to serve the remainder of his sentence of

---

[1] As discussed in the unredacted version of the Government's opposition to compassionate release, which has been filed under seal, Pabon's conduct was even more troubling, but for purposes of this Order, the Court elects not to go into further detail.

imprisonment in home confinement. Dkt. 53 ("Motion"). Pabon argues, among other reasons, that he is "at risk of becoming severely ill or dying if he contracted COVID-19," particularly because he claims to be obese and to have asthma. *Id.* at 1. He further contends that many prisoners at Allenwood Low have contracted COVID-19 and that prison officials are unable to contain the spread. *Id.* at 1, 3. Second, Pabon seeks compassionate release because he claims that he is the "sole caregiver to his wife," who suffers from lupus and rheumatoid arthritis. *Id.* at 1-2. The undersigned was reassigned to this case on January 29, 2021.

The Government filed its opposition to Pabon's motion on February 5, 2021. Dkt. 57. The Government argues that Pabon has not shown "extraordinary and compelling reasons" justifying compassionate release. *Id.* at 1. According to the Government, Pabon faces little risk from COVID-19 because he received the COVID-19 vaccine. *Id.* at 6. The Government also offers evidence that suggests Pabon actually may not suffer from obesity or asthma and questions the validity of Pabon's claim that he must serve as his wife's caretaker. *Id.* at 6-7. The Government further points to measures undertaken at Allenwood Low to mitigate the spread of COVID-19 and the success of those measures. *Id.* at 6-7. Finally, the Government argues that the factors set forth in 18 U.S.C. § 3553(a) weigh against releasing Pabon in all events. *Id.* at 7-8.[2]

## II. Legal Standard

"The Court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Newton*, No. 18 Cr. 373 (RJS), 2021 WL 321847, at *2

---

[2] Pabon dedicated a portion of his motion to arguing that his motion is properly before the Court because he exhausted all administrative procedures by first seeking compassionate release from the warden of Allenwood Low. *See* Motion at 5-8. In its opposition, the Government concedes that Pabon exhausted his administrative remedies. Dkt. 57 at 1. This concession is dispositive of this issue because the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is not jurisdictional. *See, e.g.*, *United States v. Newton*, No. 18 Cr. 373 (RJS), 2021 WL 321847, at *2 n.1 (S.D.N.Y. Feb. 1, 2021).

(S.D.N.Y. Feb. 1, 2021) (quoting *United States v. Felix*, No. 12 Cr. 322 (RJS), 2020 WL 4505622, at *1 (S.D.N.Y. Aug. 4, 2020)).  One such statute allows for compassionate release, through which the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  Pursuant to the First Step Act, district courts have discretion "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release" and are not limited by the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, which outlines only some extraordinary and compelling reasons.  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

The defendant has the burden "to show that he is eligible for and deserving of compassionate release."  *Newton*, 2021 WL 321847, at *2.  But even if a defendant demonstrates that "extraordinary and compelling reasons" for compassionate release exist, "[a] court is not required to reduce a sentence on compassionate release grounds" because the decision "rests in the discretion of the court."  *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).

### III.  Discussion

As an initial matter, the Court disagrees with Pabon that "[t]he COVID-19 pandemic qualifies as an extraordinary and compelling circumstance for compassionate release."  Motion at 10.  Instead, the Court is persuaded by the reasoning of many other courts in this District that have concluded that "the risks posed by the [COVID-19] pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."  *United States v. Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2

(S.D.N.Y. May 14, 2020) (collecting cases); *see also United States v. Thomas*, No. 15 Cr. 667 (KPF), 2020 WL 6364677, at *4 (S.D.N.Y. Oct. 29, 2020).

Pabon next argues that his underlying medical conditions—obesity and asthma—"place him at risk of severe complications from COVID-19." Motion at 11. He asserts that he is obese with a body mass index (BMI) of 31 and "uses immune weakening medication to treat his [a]sthma." *Id.* He also points to the fact that he is a Latino male, a demographic that, Pabon asserts, has experienced a higher death rate than others. *Id.*[3] According to Pabon, these underlying risk factors, combined with the prison's alleged inability to protect inmates from COVID-19, warrant his release from prison. The Court strongly disagrees.

To start, any risk that Pabon may face from the spread of COVID-19 at Allenwood Low has been greatly reduced because he is now fully vaccinated. According to medical records

---

[3] For his assertion that "Hispanic and Latino persons experience hospitalization or death [from COVID-19] at a rate approximately four times that of non-Hispanic white persons," Pabon cites a page on the website for the Centers for Disease Control and Prevention ("CDC") that is titled "People at Increased Risk for Severe Illness." Motion at 11, 27. While that page does not contain this particular statistic, the CDC estimates elsewhere on its website that Hispanic or Latino persons have a 3.2 times higher rate of hospitalization and 2.3 times higher rate of death from COVID-19 when compared to white, non-Hispanic persons. Ctrs. for Disease Control & Prevention, *COVID-19 Hospitalization and Death by Race/Ethnicity*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last updated Feb. 12, 2021). That page observes that "[r]ace and ethnicity are risk markers for other underlying conditions that affect health including socioeconomic status, access to health care, and exposure to the virus related to occupation, e.g., frontline, essential, and critical infrastructure workers." *Id.* Elsewhere on its website, the CDC notes "increasing evidence that some racial and ethnic minority groups are being disproportionately affected by COVID-19," similarly attributing that disparity to "[i]nequities in the social determinants of health, such as poverty and healthcare access, affecting these groups." Ctrs. for Disease Control & Prevention, *Health Equity Considerations and Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last updated Feb. 12, 2021). During his incarceration, Pabon is not exposed to many of the inequities identified by the CDC, such as poor access to healthcare or exposure to the virus related to occupation. In any event, for many reasons that follow, even if this factor were to weigh in Pabon's favor, the Court would still deny compassionate release here.

submitted by the Government, Pabon received his first dose of the Moderna COVID-19 vaccine on January 5, 2021 and the second dose on February 4, 2021. Exh. A.[4] It is thus highly unlikely he will contract COVID-19. *See United States v. Doostdar*, No. 18 Cr. 255 (PLF), 2021 WL 429965, at *3 (D.D.C. Feb. 8, 2021) (denying a motion for compassionate release because the defendant's "probability of becoming ill from COVID-19 is significantly diminished by the fact that he has received the COVID-19 vaccine"); *United States v. Jones*, No. 19 Cr. 105 (MHL), 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021) (denying a motion for compassionate release because the defendant received the COVID-19 vaccination and thus "faces reduced risks from the virus").

The Government also raises serious questions about whether Pabon in fact suffers from obesity or asthma. Although Pabon baldly asserts that he has a BMI of 31, Motion at 11, his medical records indicate that as of June 30, 2020, he weighed 190 pounds and had a BMI of 26.9, Exh. B at 12-13, with an even lower BMI (23.7) the year before, Exh. C at 22. And Pabon's claim that he has a "long history of [a]sthma" and treats it with medication, Motion at 11, is undermined by his medical records from July 2019, which state that although Pabon had a "history of asthma as a child . . . [he] has had no issues with it in years" and "does not have any inhaler." Exh. C at 18.

But even crediting Pabon's medical claims, the Court is unpersuaded that they are "extraordinary and compelling reasons" that justify release. Pabon is an otherwise healthy fifty-three-year-old male. *See United States v. Mason*, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *3 (S.D.N.Y. Jan. 5, 2021) (recognizing that the CDC has warned that COVID-19 is especially risky

---

[4] The Court will file Pabon's detailed medical records, which the Government submitted directly to chambers, under seal, and in this Order will only refer to those records to the extent necessary for resolving his motion. The Court finds that the public's interest in further content of Pabon's medical records is outweighed by his privacy interests in those records.

for individuals age 65 and older). A BMI of 31 would mean that he is only slightly obese. *See United States v. Suarez*, No. 16 Cr. 453 (RJS), 2020 WL 7646888, at *4 (S.D.N.Y. Dec. 23, 2020) (explaining that obesity is defined as a BMI above 30). Although the CDC now recognizes that a BMI of 30 or above increases an individual's risk of severe illness from COVID-19, "numerous courts in this Circuit have continued to hold that obesity – particularly where, as here, the movant's BMI is just barely above 30 – does not constitute 'extraordinary and compelling' circumstances calling for relief." *Id.* (collecting cases). As for Pabon's alleged asthma, the CDC recognizes that such a condition only "*might* increase [his] risk for severe illness from COVID-19," and only if it is moderate to severe. Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions*, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021) (emphasis added). Nothing in the record suggests that Pabon suffers from moderate to severe asthma. Indeed, it suggests just the opposite. Exh. C at 18. Pabon has thus failed to carry his burden of explaining why any of his alleged conditions constitute an "extraordinary and compelling reason[]" to warrant release from prison.

Moreover, Allenwood Low has barely any cases of COVID-19 at present, further suggesting that Pabon faces very little risk of contracting the virus. Pabon contends that as of December 17, 2020, 152 of the 1,019 inmates at Allenwood Low had COVID-19. Motion at 16-17. While an outbreak seems to have occurred at the prison nearly two months ago, *see United States v. Mieses*, No. 17 Cr. 251 (PGG), 2021 WL 124420, at *4 (S.D.N.Y. Jan. 13, 2021) (noting that Probation and Pretrial Services confirmed there were 136 positive cases among inmates at Allenwood Low on December 23, 2020), it has subsided greatly since that time. According to Bureau of Prison records, as of February 12, 2021, one inmate and zero staff members now have COVID-19 at Allenwood Low. *See* Fed. Bureau of Prisons, *COVID-19 Cases*,

7

http://www.bop.gov/coronavirus (last updated Feb. 12, 2021). This, combined with the fact that Pabon has received both doses of the COVID-19 vaccine, means that the likelihood that Pabon will contract COVID-19 and become seriously ill is extremely small. Pabon thus has failed to meet his burden of showing that any risk related to COVID-19 constitutes an "extraordinary and compelling" reason justifying his early release from prison.

Pabon also argues that he should be released from prison because he is the "sole caregiver to his wife" who suffers from lupus and rheumatoid arthritis and is recovering from other injuries due to a fall at work. Motion at 19, 21. This too is a nonstarter. "[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (internal quotation marks and citation omitted). Pabon has relied solely on his own unsubstantiated assertions that he is his wife's only caretaker and offers no showing that there is a dearth of other family members or individuals that could provide any needed services to his wife. On this record, Pabon thus has failed to show that his need to care for his wife is a "extraordinary and compelling" circumstance.

In sum, the Court has considered all of the above reasons and any others that Pabon raises in passing in his motion papers, both individually and collectively, and finds that no "extraordinary or compelling" reason justifying Pabon's release from prison exists.

Finally, even if Pabon had carried his burden and shown "extraordinary and compelling reasons" for compassionate release, the Court would still deny his motion because the § 3553(a) factors weigh heavily against Pabon's early release from prison. After consideration of these factors, the Court finds that the following in particular warrant keeping Pabon's sentence of

imprisonment intact: (i) "the nature and circumstances of the offense," (ii) the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (iii), the need "to afford adequate deterrence to criminal conduct," and (iv) the need "to protect the public from further crimes of the defendant."  18 U.S.C. §§ 3553(a)(1), (2)(A)-(C).

Pabon's criminal conduct was deplorable, caused great harm to some of the most vulnerable members of our society, and demands strong deterrence.  Pabon distributed images and videos depicting horrific child pornography.  For example, one image showed what appeared to be a pre-pubescent girl lying naked on a bed while one of her ankles was bound with a rope.  PSR ¶ 9.  A video Pabon distributed on a Kik chat room via Dropbox depicted what appeared to be two prepubescent girls engaged in oral sex, while another video depicted another apparently prepubescent girl masturbating.  *Id.* ¶ 16.  And Pabon possessed a massive collection of child pornography images, including 188 images of sadistic or masochistic conduct, 724 images of infants and toddlers, 1,059 images of adults engaged in sexual activity with minors, and 236 images of minors engaged in sexual activity with other minors.  *Id.* ¶ 18.  The harm caused by child sexual exploitation is very real and cannot be overstated, as evidenced by Pabon's own conduct.  As noted above, NCMEC identified 62 different series of images possessed by Pabon that depicted known victims of child exploitation.  *Id.* ¶ 21.  While imposing Pabon's sentence, Judge Batts noted "very disturbing" statements from some of Pabon's victims.  Sentencing Tr. at 9.  Child pornography has a devastating harm on society and requires both specific and general deterrence.  Releasing Pabon after serving only 18 months—a mere 25% of his total sentence—would undermine the goals of a sentence that already reflected a sizable downward variance.  *See United States v. Sherlock*, No. 17 Cr. 597 (RJS), 2020 WL 7263520, at *3 (S.D.N.Y. Dec. 10, 2020).

The § 3553(a) factors therefore compel the conclusion that the sentence of imprisonment Judge Batts imposed should remain in order to recognize the seriousness of Pabon's crimes, provide just punishment for Pabon's actions, deter Pabon and others from engaging in similar conduct, and protect society from any further crimes of Pabon.

### IV. Conclusion

For the above reasons, Pabon's motion for compassionate release is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 53 and to mail a copy of this Memorandum Opinion and Order to Defendant.

SO ORDERED.

Dated: February 16, 2021
      New York, New York

                                                          JOHN P. CRONAN
                                                United States District Judge